**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**Hugh MAJOR, d/b/a Hugh Major Truck Service, Respondent.**

**No. 13240.**

United States Court of Appeals Seventh Circuit.

July 6, 1961.

Rehearing Denied Dec. 21, 1961.

Marcel Mallet-Prevost, Asst. Gen. Counsel, Stuart Rothman, Gen. Counsel, Dominick L. Manoli, Assoc. Gen. Counsel, Samuel M. Singer, Morton Namrow, Attys., N.L.R.B., Washington, D. C., for petitioner.

Edward D. Groshong, East Alton, Ill., Emerson Baetz, Alton, Ill., for respondent.

Before HASTINGS, Chief Judge, and DUFFY and SCHNACKENBERG, Circuit Judges.

DUFFY, Circuit Judge.

The Labor Board petitions for enforcement of its order issued on October 10, 1960 following usual proceedings under Section 10 of the Act, 29 U.S.C.A. § 160. The Board's decision and order are reported at 129 N.L.R.B. No. 40.

The Board found respondent violated Section 8(a) (1) of the Act, 29 U.S.C.A. § 158(a) (1), by threatening to sell his trucks and discharge his driver employees if they voted in favor of the union. The Board also found that respondent violated Section 8(a) (3) and (1) of the Act by discharging all of his

drivers in order to avoid dealing with the union.

Respondent is an individual doing business as Hugh Major Truck Service with his place of business in South Roxanna, Illinois. Prior to the discharges in question, respondent used two methods of carrying on his business. He leased trucks [1] from independent operators who furnished their own drivers. He owned six trucks for which he employed six drivers. He also owned about forty trailers which were hauled either by leased trucks or by the trucks owned by him. In 1959, while company trucks numbered either six or seven, the number of leased trucks varied from sixteen to twenty-three.

For some two years previous to the date of the alleged unfair labor practices, respondent had been consulting with his tax lawyer who had advised that respondent cease owning his own rolling equipment. There were some delays in putting the proposed change into effect, one of which was the failure to obtain an audit satisfactory to the attorney. It was contemplated that one corporation would be formed to operate the trucking business and another corporation to own the equipment.

In December 1959, Work Well, Incorporated, was formed by respondent's wife, his son and the latter's wife. The forty trailers and two of respondent's trucks were transferred to this company; the remaining four trucks were disposed of elsewhere.

Respondent insists there is no substantial evidence in the record to warrant the findings: 1) that he threatened his employees with reprisals in the event of unionization, and 2) that he discharged all of his drivers to defeat employee rights guaranteed under the Act. Respondent points out it is well established that one may discontinue a business operation without being guilty of discrimination against union members who thereby lose their jobs.

It must be admitted the case against the respondent is not strong. However, there is some evidence which is substantial on the record as a whole to warrant the findings of the Board as hereinbefore stated.

The union election was slated for November 21, 1959. About ten days prior thereto, respondent said to one of his drivers named Elfred Elledge, "There is a lot of talking going around about a union and if it goes union the trucks will be sold," but respondent quickly added, "There isn't anything to worry about."

The second bit of evidence is in a brief statement which, in turn, was part of a long conversation between Worthy, a truck lessor, and respondent. Worthy had inquired about his status as a lessor if the union carried the election. Respondent assured him it wouldn't bother him in the least and if worse came to worse and the election went against respondent and for the union, "there won't be any company equipment." It is claimed one of respondent's drivers named Catterson was present while this conversation was taking place, but Worthy was not certain on this point. Respondent argues there was no positive proof that Catterson heard any part of the conversation. The Board's counsel did not produce Catterson as a witness although he was listed in the proceedings before the Board as a complainant. Nevertheless, there is sufficient evidence in the record to justify the trial examiner drawing the inference that Catterson was present at the conversation between the respondent and Worthy.

In Bonnie Lass Knitting Mills, Inc., 126 N.L.R.B. 1396, the Board found that the employer had discriminatorily terminated its manufacturing operations with the resultant discharge of some fifty employees, leaving itself with only a jobbing operation requiring a much smaller number of employees. The question presented was whether to require the employer to reopen its manufacturing op-

---

1. At times referred to as "tractors."

erations in order to effect full reinstatement for the discharged employees.

The Board, in Bonnie Lass, pointed out that the employer had disposed of its machinery and equipment, but it considered the possibility it might resume its manufacturing operations. The Board, therefore, ordered that in the event of such resumption of manufacturing operations, it must offer all employees who were discriminatingly discharged, immediate and full reinstatement to their former or substantially equivalent positions and make them whole for any loss of pay.

In the alternative, the employer was required, in the event that manufacturing operations were not resumed, to make whole the employees discriminatingly denied reinstatement for any loss of pay by paying to each of them a sum of money equal to the amount he or she would normally have earned as wages from the date of the discharge until such time as each secured substantially equivalent employment with other employers. The Board also made a reservation to modify the back pay and reinstatement provisions if a change in conditions warranted them.

In the instant case, the trial examiner recommended that the remedy be similar to that ordered in the Bonnie Lass case. The Board refused to follow this recommendation, stating the respondent still was in the trucking business.

We agree with the recommendation of the trial examiner. Under the facts of this case, we do not believe respondent should be forced to re-enter a trucking business wherein he would be required to repurchase and operate his own trucks. To impose this kind of a servitude upon respondent, an individual, would be punitive rather than remedial.

Respondent originally consulted a tax attorney some two and a half years prior to the hearing in this case. No one suggests this was done because of any anti-union considerations. For eighteen months, respondent did not adopt the attorney's suggestions. However, in the spring of 1959, respondent authorized his attorney to proceed to carry out his recommendations. This was prior to the filing by the union of its representation petition. Thereafter occurred the delay due to the requested audit report.

It may well be that the filing of the representation petition or the union election speeded up the action. Nevertheless, as the trial examiner pointed out, respondent had made it clear from the outset that he wanted no part of the ownership of the rolling stock, but wished to confine himself to operations only. This attitude throws some light on the stock ownership of the new corporation called Work Well, Incorporated. This stock is vested primarily in respondent's wife and son who were actively associated with him in the operation of his business, and also in the son's wife as a necessary third party.

The portion of the Board's order under paragraph 1 will be enforced. This requires, among other things, that respondent cease and desist from discouraging membership or activities in behalf of Local 525, International Brotherhood of Teamsters. Also, that respondent cease and desist from threatening employees to discourage union membership or activities or from in any manner, interfering with, restraining, or coercing employees in the exercise of their right to form labor organizations.

■ Although we decline to order the enforcement of that part of the Board's order requiring respondent to resume trucking operations with his own trucks and his own truck drivers, we would enforce an order substantially in the form proposed by the trial examiner which includes creating a preferential hiring list if and when respondent resumes operations of his own trucks, and also the other provisions contained in the trial examiner's recommended order.

Enforcement of order granted in part and refused in part.